UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TBC CONSULTORIA EM
INVESTIMENTOS FINANCEIROS LTDA.,

                Petitioner,

           -against-

GRADUAL CORRETORA DE CAMBIO,
TITULOS E VALORES MOBILIARIOS
S.A.,

                Respondent.

**ORDER**

17 Civ. 3145 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        TBC Consultoria em Investimentos Financeiros Ltda. ("TBC") filed a petition to confirm an arbitration award (the "Award") issued by the Brazil-based Chamber of Conciliation, Mediation, and Arbitration CIESP/FIESP (the "Chamber")[1] pursuant to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 et seq., and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.  (Pet. (Dkt. No. 1))  Although the Petition was served (Dkt. No. 14), Respondent Gradual Corretora de Cambio, Titulos e Valores Mobiliarios S.A. ("Gradual") has neither opposed the Petition nor otherwise appeared in this action.[2]  For the reasons stated below, the Award will be confirmed.

---

[1] CIESP stands for Centro das Indústrias do Estado de São Paulo (Center of Industries of São Paulo) and FIESP stands for Federação das Indústrias do Estado de São Paulo (Federation of Industries of São Paulo).  See The Chamber, CHAMBER OF CONCILIATION, MEDIATION AND ARBITRATION CIESP/FIESP, www.camaradearbitragemsp.com.br/en/chamber.html.

[2] The Petition also names Fernanda Ferraz Braga de Lima de Freitas and Gabriel Paulo Gouvea de Freitas Junior as Respondents, but they were voluntarily dismissed.  (Dkt. Nos. 20, 21, 22)

## BACKGROUND

Petitioner TBC is a limited liability company incorporated and registered in Brazil. (Pet. (Dkt. No. 1) ¶ 5) TBC "operates as an intermediary of securities and derivatives for investment funds, . . . primarily . . . in the cities of Ribeirão Preto, Uberlândia, and Goiânia in Brazil." (Id. ¶ 16; Award (Dkt. No. 18-4) at 17)[3] Respondent Gradual is based in São Paulo, Brazil and "operates as a broker of securities." (Pet. (Dkt. No. 1) ¶ 17; Award (Dkt. No. 18-4) at 17)

On September 14, 2011, TBC and Gradual entered into a Service Agreement for Distribution and Mediation of Securities, Shares of Investment Funds and Derivatives ("Service Agreement"). (Pet. (Dkt. No. 1) ¶¶ 3, 20; Service Agreement (Dkt. No. 18-6)) Pursuant to the Service Agreement, TBC agreed to act as Gradual's "exclusive autonomous investment agent" in the cities of Ribeirão Preto, Uberlândia, and Goiânia. (Pet. (Dkt. No. 1) ¶ 20; Service Agreement (Dkt. No. 18-6) §§ 2.1, 4.1) In exchange for TBC's services, Gradual agreed to pay TBC monthly compensation based on net income that it helped originate. (Pet. (Dkt. No. 1) ¶ 21; Service Agreement (Dkt. No. 18-6) § 6.1)

The Service Agreement was effective until November 9, 2012, and provided for automatic renewal for successive 12-month terms, unless either side gave notice of its intent not to renew at least 60 days before the expiration of a term. (Pet. (Dkt. No. 1) ¶ 22; Service Agreement (Dkt. No. 18-6) § 7.1) If either party opted not to renew, or if Gradual terminated the Service Agreement without cause, Gradual would be responsible for paying TBC a bonus payment equal to 1.70 times the value of net income generated by TBC over the previous 12

---

[3] Citations to page numbers refer to the pagination generated by this District's Electronic Case Files ("ECF") system.

months ("Bonus Payment").  (Pet. (Dkt. No. 1) ¶¶ 22-23; Service Agreement (Dkt. No. 18-6) §§ 7.2, 7.3, 8.1, 8.1.1)  If TBC terminated the contract without cause, however, TBC would not receive a Bonus Payment.  (Pet. (Dkt. No. 1) ¶ 23; Service Agreement (Dkt. No. 18-6) § 7.4)  If Gradual failed to pay any Bonus Payment on time, the Bonus Payment would be adjusted for inflation (based on the IGP-M index[4]) and subject to a 2 percent penalty and 1 percent monthly interest.  (Service Agreement (Dkt. No. 18-6) § 8.4)

Pursuant to Section 12 of the Service Agreement, disputes arising out of the Agreement are to be resolved through arbitration.  (Service Agreement (Dkt. No. 18-6) § 12)  Relevant excerpts from Section 12 read as follows:

> 12.2. . . . [C]onflicts arising from or related to this Agreement, including those involving its validity, efficacy, violation, construction, end, termination and related matters shall be solved through arbitration, according to the conditions below ("Arbitration").
>
> 12.3.  The dispute shall be referred to the Chamber of Arbitration of the Centro das Indústrias de São Paulo - CIESP, . . . which shall apply the Brazilian law. . . .
>
> 12.4.  The arbitration decision shall be final, unappealable and shall bind the PARTIES that undertake to spontaneously comply with it.
>
> . . . .
>
> 12.8.  Except when the arbitration award decides otherwise, the expenses incurred in the Arbitration shall be borne in equal parts by the PARTIES involved in the arbitration proceeding, except those specific of each party as regards the conduction of the proceeding, including, but not limited to, lawyer fees.

(Service Agreement (Dkt. No. 18-6) §§ 12.2-12.4, 12.8)

---

[4]  See General Prices IGP-M YoY, BLOOMBERG.COM, www.bloomberg.com/quote/IBREGPMY:IND (describing the IGP-M index as a "general price index [that] measures a broader range of Brazilian inflation than the consumer price index," and noting that "[i]t is constructed from 3 price indices:  wholesale price index (60%), consumer price index (30%) and an index of national construction costs (10%)")

TBC notified Gradual of its intent not to renew the Service Agreement on September 4, 2012, 66 days before November 9, 2012, which was the endpoint of the initial term. (Pet. (Dkt. No. 1) ¶¶ 27, 29; Arbitration Award (Dkt. No. 18-4) at 19-21) In a September 6, 2012 email, TBC informed Gradual that "[TBC] will continue to comply with the [Service] Agreement, up to the end of the contractual term." (Pet. (Dkt. No. 1) ¶ 31; Arbitration Award (Dkt. No. 18-4) at 21)

Shortly thereafter, Gradual prevented TBC from performing under the Service Agreement by blocking TBC from accessing the "Gradual System," a tool necessary for TBC's work under the Service Agreement. (Pet. (Dkt. No. 1) ¶ 32; Arbitration Award (Dkt. No. 18-4) at 8)

TBC filed a notice of arbitration with the Chamber on September 27, 2012. (Pet. (Dkt. No. 1) ¶ 33; Arbitration Award (Dkt. No. 18-4) at 6) The parties submitted extensive briefing to a Chamber arbitral tribunal, which conducted a hearing on October 28 and 31, 2013. (Pet. (Dkt. No. 1) ¶ 34; Arbitration Award (Dkt. No. 18-4) at 16) Closing arguments took place on January 10, 2014. (Pet. (Dkt. No. 1) ¶ 34; Arbitration Award (Dkt. No. 18-4) at 16) On April 28, 2014, the tribunal issued a 59-page Award in favor of TBC. (Pet. (Dkt. No. 1) ¶ 35; Untranslated Award (Dkt. No. 18-3))

After reviewing the testimony and documentary evidence at length (Award (Dkt. No. 18-4) at 19-30), the arbitral tribunal concluded that TBC did not intend to terminate the Service Agreement, but had only sought to give notice of its intent not to renew the Service Agreement for another term. (Id. at 30) According to the Award, the Agreement was terminated because Gradual prevented TBC from fulfilling its contractual obligations through November 9, 2012. (Id.) The tribunal found that Gradual's termination of the Agreement was without cause

4

and that TBC was therefore entitled to a Bonus Payment. (Id.) The tribunal awarded TBC the following relief: R$5,345,163.61 Brazilian Reais (the amount of the unpaid Bonus Payment), R$49,150.42 Brazilian Reais in damages resulting from Gradual's premature termination of the Service Agreement, R$79,570.99 Brazilian Reais in arbitration costs, and R$200,000 Brazilian Reais in legal fees. (Pet. (Dkt. No. 1) ¶ 38; Arbitration Award (Dkt. No. 18-4) at 35) The tribunal ordered that – if Gradual failed to remit the awarded amount to TBC within 30 days – the award would be adjusted for inflation based on the IGP-M index and subject to a 2 percent penalty and 1 percent monthly interest. (Arbitration Award (Dkt. No. 18-4) at 36; Service Agreement (Dkt. No. 18-6) § 8.4) To date, Respondent has not paid any portion of the award. (Pet. (Dkt. No. 1) ¶ 41)

## DISCUSSION

"A petition to confirm an arbitration award rendered in a foreign state is governed by the [New York] Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 53 (the 'Convention'), as implemented by, and reprinted in, the Federal Arbitration Act ('FAA'), 9 U.S.C. §§ 201-08." Chi Ho Mar. S.A. v. C & Merch. Marine Co. Ltd, No. 08 CIV. 7997 (WHP), 2010 WL 1253720, at *2 (S.D.N.Y. Mar. 11, 2010) (citing Compagnie Noga D'Importation et d'Exportation S.A. v. Russian Fed'n, 361 F.3d 676, 683 (2d Cir. 2006)). "Under the Convention, [a] district court's role in reviewing a foreign arbitral award is strictly limited" and "the showing required to avoid summary confirmance is high." Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15, 19, 23 (2d Cir. 1997) (quoting Ottley v. Schwartzberg, 819 F.2d 373, 376 (2d Cir. 1987)); see also Noga, 361 F.3d at 683 ("'[T]he public policy in favor of international arbitration is strong.'") (quoting Fotochrome, Inc. v. Copal Co., 517 F.2d 512. 516 (2d Cir. 1975)). "[T]he

5

FAA provides that, upon the application of a party to an arbitration award made pursuant to the Convention, a district court shall enter 'an order confirming the award as against any other party to the arbitration,' unless the court 'finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the . . . Convention.'" Noga, 361 F.3d at 683 (quoting 9 U.S.C. § 207).

"[A]rbitration awards are not self-enforcing, [but] they must be given force and effect by being converted to judicial orders by courts; these orders can confirm and/or vacate the award, either in whole or in part." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006) (internal quotation marks omitted). Where the respondent fails to file any opposition, a petition to confirm an arbitration award is "treated as akin to [an unopposed] motion for summary judgment." Id. at 109-10; Travel Wizard v. Clipper Cruise Lines, No. 06 Civ. 2074 (GEL), 2007 WL 29232, at *2 (S.D.N.Y. Jan. 3, 2007) ("[W]here one party altogether fails to respond to a motion to vacate or confirm an award, . . . district courts should assess the merits of the record rather than entering a default judgment").

After reviewing the record, "confirmation of an arbitration award is [normally] 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" D.H. Blair, 462 F.3d at 110 (quoting Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984)). Because, "[t]he Convention . . . 9 U.S.C. §§ 201 et seq., applies to the Final Award. . . . the Court must confirm the Final Award 'unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the . . . Convention,' 9 U.S.C. § 207, namely, grounds for vacating, modifying or correcting the award as provided under 9 U.S.C. §§ 10-11." Mut. Marine Office, Inc. v. Transfercom Ltd., No. 08 Civ. 10367 (PGG), 2009 WL 1025965, at *2 (S.D.N.Y. Apr. 15, 2009) (citing 9 U.S.C. § 208 (providing that

the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., will apply in cases governed by the Convention so long as its provisions are not in conflict with the Convention)).  "Under the terms of § 9 [of the Federal Arbitration Act], a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11.  Section 10 lists grounds for vacating an award, while § 11 names those for modifying or correcting one."[5]  Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 582 (2008).  Here, Gradual has filed no opposition to the petition to enforce the Award, and accordingly has not offered any ground for vacating, modifying, or correcting it.

        While this Court has independently reviewed the Award and is satisfied that reasons for the Award are explained, "[t]he arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." D.H. Blair, 462 F.3d at 110 (internal quotation marks omitted).  To confirm an arbitration award, only "a barely colorable justification for the outcome reached" is necessary.  Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Employees Int'l Union, 954 F.2d 794, 797 (2d Cir. 1992).  "It is only when the arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable." Major League Baseball Players Ass'n

---

[5] "Pursuant to Section 10, this Court may vacate an arbitration award where:  (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing or refusing to hear evidence pertinent to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Interdigital Commc'ns Corp. v. Nokia Corp., 407 F. Supp. 2d 522, 528 (S.D.N.Y. 2005) (citing 9 U.S.C. § 10(a)).

v. Garvey, 532 U.S. 504, 509 (2001) (internal quotation marks omitted).  This is clearly not the case here.

The Service Agreement provides that disputes arising under it must be resolved through arbitration before the Chamber pursuant to Brazilian law.  (Service Agreement (Dkt. No. 18-6) §§ 12.2-12.3)  The Chamber arbitral tribunal was thus empowered to assess whether Gradual terminated the Service Agreement without cause and what damages flowed from that termination.  After reviewing the Service Agreement and the evidence adduced during the arbitration, the tribunal found that "the termination of the [Service Agreement] was not caused by . . . [TBC], but by decisions taken by [Gradual]," which "prevented [TBC from] continu[ing] to comply with its contractual obligations until November 9, 2012."  (Award (Dkt. No. 18-4) at 30)  Finding that "the [Service Agreement] was terminated without cause by [Gradual]," the tribunal determined that TBC was "entitled to receive the bonus set forth in the [Service Agreement]" and damages suffered "by [TBC] as a result of the abusiveness of [Gradual's] business decisions."  (Id. at 33-34)  Given that there is no evidence suggesting corruption, fraud or other impropriety on the part of the arbitral tribunal, there is no basis for this Court to deny confirmation of the Award.  Accordingly, the Award will be confirmed.

## CONCLUSION

For the reasons stated above, the Petition to confirm the arbitration award (Dkt. No. 1) is granted.  Petitioner is awarded $3,145,573.51, which accounts for the unpaid Bonus Payment, damages resulting from Respondent Gradual's premature termination of the Service Agreement, arbitration costs, legal fees, late-payment penalty, inflation adjustment, and accrued interest.  (See Pet. Decl. (Dkt. No. 23))  Post-judgment interest shall accrue as set forth in 28

U.S.C. § 1961(a). The Clerk of Court is directed to enter judgment for Petitioner and close the case.

Dated: New York, New York
August 28, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge